591 So.2d 783 (1991)
STATE of Louisiana
v.
Billy Ray BENNETT.
No. 89-KA-2096.
Court of Appeal of Louisiana, Fourth Circuit.
December 11, 1991.
*784 M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant/appellant.
Harry F. Connick, Dist. Atty. and Patricia Blanco, Asst. Dist. Atty., New Orleans, for appellee.
Before CIACCIO, LOBRANO and WARD, JJ.
CIACCIO, Judge.
The defendant, Billy Ray Bennett, was charged by bill of information with forcible rape, a violation of LSA-R.S. 14:42.1. After the defendant was found guilty as charged, the State filed a multiple bill of information against him alleging that he had three prior felony convictions. The defendant was subsequently found to be a fourth offender and was sentenced to forty years at hard labor. He now appeals.
Shortly after midnight on August 26, 1988, the victim was leaving her job as a cashier at the AVC Video Store in Gretna when she was approached by the defendant in the parking lot. The defendant asked her if she wanted to buy a video cassette recorder (VCR). She told him that she did. He agreed to sell her a VCR for fifty dollars. The victim only had eight dollars in her possession but the defendant accepted that amount as partial payment and agreed to collect the balance on the following day.
The defendant then got into the victim's car with her and directed her to drive to a location in Algiers where he was going to pick up the VCR that he was selling to her. At some point, the defendant directed the victim to a dead-end street. The victim stopped the car at the end of the street and the defendant told her that he would give her the VCR if she would have sex with him. The victim refused but the defendant grabbed her and forced her to have sex with him. When another man walked by, the defendant threatened to kill the victim if she screamed.
The defendant then ordered the victim to drive to a second location in Algiers where he raped her again. Afterward, he ordered her to drive to another location where he got out of the car. The victim then drove to her home in Marrero and called the Jefferson Parish Sheriff's Department to report the rape. She later met with two officers of the Gretna Police Department who drove around with her trying to determine the locations where she had been raped. As they were driving, the victim spotted the defendant walking down the street. The officers stopped the defendant and told him that the victim had made a rape complaint and had identified him as the perpetrator. The defendant admitted having sex with the victim but claimed that *785 it was consensual and in exchange for the VCR.
The officers did not arrest the defendant but he willingly got into the police car and directed the officers to one of the locations where the victim claimed that she had been raped. Because the location was in Orleans Parish, the officers brought the victim and the defendant back to the Gretna Police Department headquarters and notified the New Orleans Police Department (NOPD). Detective Ronald Pugh of NOPD went to Gretna and interviewed the victim and the defendant. Detective Pugh then arrested the defendant who was later charged with forcible rape.
In his first assignment of error, the defendant argues that the trial court erred in overruling his objection to the hearsay testimony of Dr. John Jones. Dr. Jones performed the rape examination of the victim. When asked what the victim told him when she arrived at Charity Hospital, Dr. Jones stated that the victim stated that a man forced her to drive to a secluded area and raped her. At that point, defense counsel objected to this testimony as inadmissible hearsay. The trial judge overruled the objection. Dr. Jones then continued his testimony stating that the victim told him that her assailant held her by the neck and forced her to sit on his penis. The defendant now argues that this testimony by Dr. Jones was inadmissible hearsay and that the trial court erred in overruling his objection to this testimony.
Hearsay is defined in the Louisiana Code of Evidence as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." LSA-C.E. art. 801 C. Hearsay is generally inadmissible unless it falls within certain exceptions set forth in LSA-C.E. arts. 803 and 804. Article 803 provides in part:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
... (2) Excited utterance. A statement described or explaining an event or condition made while the declarant was under the stress of excitement caused by the event or condition.
... (4) Statements for purposes of medical treatment and medical diagnosis in connection with treatment. Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment ..."
In State v. Reaves, 569 So.2d 650 (La. App. 2nd Cir.1990), writ denied, 576 So.2d 25 (La.1991), a rape victim told her employer details of the crime two hours after the attack as the employer drove the victim to the coroner's office for a rape examination. The Second Circuit held that the victim's statements to her employer made during that trip did not fall within the "excited utterance" exception to the hearsay rule because of the length of time between the crime and the statements and because the victim had already given detailed statements about the crime to the police. Therefore, the court held that the victim's statements to her employer two hours after the crime were inadmissible hearsay.
In the instant case, Dr. Jones could not recall the time of the victim's rape examination during which she made the statements about the crime to him but the record indicates that the examination occurred sometime after 1:30 p.m. on the afternoon of August 26, 1988. The record also establishes that the rapes took place between midnight and 2:45 a.m. on August 26, 1988. Therefore, more than ten hours elapsed between the time that the victim was raped and the time that she spoke to Dr. Jones. Furthermore, prior to making the statements to Dr. Jones, the victim gave a detailed statement to the police about the crime. In light of these facts, the victim's statements to Dr. Jones about the rapes did not fall within the "excited utterance" exception to the hearsay rule.
However, the victim's statements to Dr. Jones, in part, do fall within the exception *786 to the hearsay rule for "statements for purposes of medical treatment and medical diagnosis in connection with treatment." The Louisiana Supreme Court has stated that the use of the hearsay history of the case as told to the physician by the patient may be admissible if received not to show the truth of the facts stated but only the basis for his opinion, but all of the hearsay history not necessary to this diagnosis is inadmissible. State v. Watley, 301 So.2d 332 (La.1974).
In this case, the statements made by the victim to Dr. Jones regarding the fact that she had been raped and, more specifically, that she had been held by the neck and forced to sit on her assailant's penis were reasonably pertinent to the treatment and/or diagnosis by Dr. Jones. These statements by the victim showed the purpose for the rape examination performed by Dr. Jones and were not used to show the truth of the facts stated.
However, the victim's statement to Dr. Jones that she had been forced to drive to a secluded place was not reasonably pertinent to the treatment and/or diagnosis of the victim, and, therefore, was inadmissible hearsay. However, the erroneous admission of this statement is not reversible error because there is no reasonable possibility that this evidence contributed to the verdict in light of the other evidence of defendant's guilt. See State v. Hayes, 414 So.2d 717 (La.1982); State v. Francis, 546 So.2d 1357 (La.App. 4th Cir.1989), writ denied, 551 So.2d 1336 (La.1989). Furthermore, the victim herself testified that she was taken to a secluded area. Additionally, prior to Dr. Jones testimony, a tape of the call made by the victim to the police was played at trial and included a statement by the victim that she had been taken to a secluded area and raped. Therefore, the admission of Dr. Jones' testimony that the victim told him that she had been taken to a secluded area was harmless error.
This assignment of error is without merit.
In his second assignment of error, the defendant argues that the trial court erred in denying his motion for mistrial which was made when the State referred to defendant's post-arrest silence which is prohibited by Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). During cross-examination, the defendant was asked what happened after he was arrested by Detective Pugh. The defendant answered:
"He read me my rights after he talked to me. He read me my rights after he asked me my statement and the young lady's statement."
The prosecutor then asked the defendant:
"Do you recall after he read you your rights is it not a fact that you refused to say anything to him?"
At that point, the record indicates that defense counsel asked to approach the bench and a brief bench conference was held. The cross-examination of the defendant then resumed without reference to what transpired during the bench reference and with no further questions regarding defendant's post-arrest silence. The minute entry for this portion of trial states that "out of presence of jury, all objections as noted by defense." On appeal, the defendant claims that it is clear from the record that the defense objected to the question regarding defendant's post-arrest silence and "probably moved for a mistrial."[1]
LSA-C.Cr.P. art. 841 provides:
"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
The requirement of an objection shall not apply to the court's ruling on any written motion."
*787 In this case, the record does not contain a motion for mistrial, a request for an admonishment or even a specific objection to the questioning of defendant regarding his post-arrest silence.
In State v. Grant, 531 So.2d 1121 (La. App. 4th Cir.1988), writ denied, 567 So.2d 1117 (La.1990), defense counsel objected to a question to a witness regarding the defendant's use of cocaine and asked to make a motion outside the presence of the jury. After a brief conference was held in the judge's chambers, the trial judge admonished the jurors to disregard the question. The defendant was later asked about his use of cocaine and his counsel objected by stating that he renewed his objection and motion. The trial judge denied the unspecified objection and motion.
In the appeal of the Grant case, the defendant argued that reversible error occurred at trial when the prosecutor made improper reference to other crimes alleged to have been committed by the defendant in violation of LSA-C.Cr.P. art. 770. This court found no trial error warranting the reversal or modification of defendant's conviction or sentence because there was no indication in the record that the defendant moved for a mistrial or stated the basis for his objections. The court held that the failure to move for a mistrial or an admonishment waives raising the error on appeal unless the defendant objects to improper remarks and the objection is overruled. State v. Grant, supra; State v. Baylis, 388 So.2d 713 (La.1980). However, if a defendant's objection is sustained and the court is presumably willing to give him whatever relief to which he is entitled, then the defendant is required to request an admonition or mistrial, if he wants one, or his failure to do so waives any error. State v. Grant, supra; State v. Baylis, supra.
In the Grant case, the record was deficient in revealing the basis for defendant's first objection to the question about defendant's cocaine use, whether any request for relief was made and whether there was a trial court ruling on the objection. As for the defendant's second unspecified objection and motion made after a question to the defendant regarding his cocaine use, the record was similarly unclear. This court stated:
"In neither instance does the record contain the ground for any objection, and whether, and if so what relief was requested. It is well settled that counsel must state the basis for his objection when making it and point out the specific error which the trial court is making. An assignment of error reserved to a trial court ruling where there is no basis for the objection stated and no error pointed out presents nothing for an appellate court to review. La.C.Cr.P. Art. 841; State v. Williams, 374 So.2d 1215 (La.1979); State v. Powell, 325 So.2d 791 (La.1976); State v. Salgado, 473 So.2d 84 (La.App. 5th Cir.1985), writ denied, 478 So.2d 1233 (La.1985).
We find that the record does not support defendant's claim of error. In neither of the two instances about which he now complains does the record contain a proper objection or a specific motion of relief. And in that instant where counsel apparently advised the court `in chambers' of the grounds for his objection and moved for specific relief, the court apparently sustained the objection and granted the requested relief; defendant can make no complaint." State v. Grant, supra at 1123-1124.
In light of the holding in the Grant case, we conclude that the defendant did not properly preserve for review on appeal the issue of whether the trial court erred in not declaring a mistrial when the defendant was questioned regarding his post-arrest silence. Nothing in the record supports the supposition by appellate counsel that a mistrial was requested by trial counsel. Although the State did not pursue the issue of defendant's post-arrest silence after the bench conference, there is no statement by the trial judge sustaining an objection to the question regarding defendant's post-arrest silence. Therefore, because the record does not include a motion for mistrial, a request for an admonishment or a specific objection to the question regarding *788 defendant's post-arrest silence, defendant waived his right to raise this issue on appeal. This assignment of error is without merit.
Accordingly, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] It is noted that the defendant was represented by different counsel on appeal than at trial.